UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SAMANTHA M.,[1]

       Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

24-CV-657-LJV
DECISION & ORDER

---

On July 12, 2024, the plaintiff, Samantha M. ("Samantha"), brought this action under the Social Security Act ("the Act"). Docket Item 1. She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled.[2] *Id.* On October 15, 2024, Samantha moved for judgment on the pleadings, Docket Item 6; on January 3, 2025, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 12; and on January 17, 2025,

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Samantha applied for both Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). One category of persons eligible for DIB includes any adult with a disability who, based on her quarters of qualifying work, meets the Act's insured-status requirements. *See* 42 U.S.C. § 423(c); *Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989). SSI, on the other hand, is paid to a person with a disability who also demonstrates financial need. 42 U.S.C. § 1382(a). A qualified individual may receive both DIB and SSI, and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs. *See* 20 C.F.R. §§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

Samantha replied, Docket Item 13.  For the reasons that follow, this Court denies Samantha's motion and grants the Commissioner's cross motion.[3]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry."  *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination."  *Id*.  This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).  Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'"  *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*."  *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citation omitted) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

more than one rational interpretation, the Commissioner's conclusion must be upheld."). But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

I.     THE ALJ'S DECISION

On March 15, 2024, the ALJ found that Samantha had not been under a disability from October 6, 2016, through the date of the decision. *See* Docket Item 4 at 301–02. The ALJ's decision was based on the five-step sequential evaluation process under 20 C.F.R. §§ 404.1520(a) and 416.920(a). *See id.* at 284–85.

At step one, the ALJ found that Samantha had engaged in substantial gainful activity between June 11, 2019, and the third quarter of 2023. *Id.* at 286. But the ALJ also found that there were continuous twelve-month periods since October 6, 2016, during which Samantha had not engaged in substantial gainful activity, and the ALJ's decision addressed those periods. *Id.* At step two, the ALJ found that Samantha suffered from eight severe, medically determinable impairments: "post-traumatic stress disorder ('PTSD'), generalized anxiety disorder, polysubstance abuse, cannabis abuse, bipolar disorder, major depressive disorder, alcohol use disorder, and schizoaffective disorder." *Id.*

At step three, the ALJ found that Samantha's severe, medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R.

3

Part 404, Subpart P, Appendix 1. *See id.* at 289. More specifically, the ALJ found that Samantha's impairments did not meet or medically equal listing 12.03 (schizophrenia spectrum and other psychotic disorders), 12.04 (depressive, bipolar, or related disorders), 12.06 (anxiety and obsessive-compulsive disorders), or 12.15 (trauma and stressor-related disorders). *Id.* In assessing Samantha's impairments, the ALJ found that Samantha was mildly impaired in understanding, remembering, or applying information and moderately impaired in interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. *Id.* at 289–90.

The ALJ then found that Samantha had the residual functional capacity ("RFC")[4] to "perform a full range of work at all exertional levels" except that:

> [Samantha] can never work at unprotected heights, never work around moving mechanical parts, and never operate a motor vehicle as a job duty. She can perform simple, routine, and repetitive tasks and make simple work-related decisions. She can occasionally interact with supervisors, coworkers, and the public.

*Id.* at 291.

At step four, the ALJ found that Samantha no longer could perform any past relevant work. *Id.* at 300. But given Samantha's age, education, and RFC, the ALJ found at step five that Samantha could perform substantial gainful activity as a marker, racker, or press operator. *Id.* at 300-01; *see Dictionary of Occupational Titles* 209.587-034, 1991 WL 671802 (Jan. 1, 2016); *id.* at 735.687-026, 1991 WL 679983 (Jan. 1, 2016); *id.* at 363.685-010, 1991 WL 673019 (Jan. 1, 2016). The ALJ therefore found

---

[4] A claimant's RFC is the most "an individual can still do despite his or her limitations . . . in an ordinary work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*; *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

that Samantha had not been under a disability from October 6, 2016, through the date of the decision.  *See* Docket Item 4 at 301–02.

## II.   ALLEGATIONS

Samantha argues that the ALJ improperly evaluated the opinion of H. Tzetzo, M.D.  Docket Item 6-1 at 12–18.  More specifically, Samantha argues that the ALJ failed to explain why certain limitations about which Dr. Tzetzo opined "were not being adopted, or on the other hand, how they were somehow accounted for in the RFC."  *Id.* at 15.  For the reasons that follow, this Court disagrees.

## III.   ANALYSIS

An ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *accord Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022).  But that does not mean that an RFC must "perfectly correspond with any of the opinions of medical sources cited in [the ALJ's] decision," *Matta*, 508 F. App'x at 56, or even be based on opinion evidence, *see Rubin v. Martin O'Malley, Comm'r of Soc. Sec.*, 116 F.4th 145, 155 (2d Cir. 2024).  So long as an ALJ considers all the medical evidence and appropriately analyzes any medical opinions, an RFC consistent with the record is not error.  *See* 20 C.F.R. § 416.945; *see also Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (holding that remand is not necessary "[w]here an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence").

On June 9, 2017, Dr. Tzetzo, a state agency medical consultant, completed a disability determination explanation form.  Docket Item 3 at 109–31.  Based on the record before her, Dr. Tzetzo determined that Samantha was moderately limited in understanding, remembering, and carrying out detailed instructions; maintaining attention and concentration; performing within a schedule and maintaining regular attendance; interacting with coworkers, supervisors, and the public; and responding appropriately to change.  *Id.* at 116–17.  Dr. Tzetzo also found that Samantha was markedly limited in regulating emotions, controlling behavior, and maintaining her well-being.  *Id.* at 123.  Dr. Tzetzo nevertheless concluded that "[b]ased on the evidence . . . [, Samantha] can handle simple work tasks."  *Id.* at 126.  The ALJ assigned Dr. Tzetzo's opinion "some weight."  Docket Item 4 at 298.

Samantha argues that "[t]he ALJ failed to properly evaluate the opinion of Dr. Tzetzo."  Docket item 6-1 at 12.  But the ALJ explicitly found that Dr. Tzetzo's opinion was largely "supported by the evidence she cited," except that the findings of "'marked' limitations" and limitations relating to Samantha's interaction with others were "not consistent with the record."  Docket Item 4 at 298.  The ALJ thus explicitly addressed the supportability and consistency factors as he was required to do.  *See Spottswood v. Kijakazi*, 2024 WL 89635, at *1 (2d Cir. Jan. 9, 2024) ("[An ALJ] must evaluate the persuasiveness of medical opinions in light of several factors, the most important of which are 'supportability' . . . and 'consistency.'" (quoting 20 C.F.R. § 404.1520(a), (c))).

What is more, the ALJ largely incorporated Dr. Tzetzo's opinion into the RFC.  For example, consistent with Dr. Tzetzo's opinion that Samantha was moderately limited in understanding, remembering, and carrying out detailed instructions and

6

maintaining attention and concentration, *see* Docket Item 3 at 116-17, the ALJ restricted Samantha to "simple, routine, and repetitive tasks and [] simple work-related decisions," *see* Docket Item 4 at 291.  Likewise, consistent with Dr. Tzetzo's opinion that Samantha was moderately limited in interacting with coworkers, supervisors, and the public, *see* Docket Item 3 at 116-17, the ALJ restricted Samantha to only occasional interaction with supervisors, coworkers, and the public, *see* Docket Item 4 at 291.

Samantha says that the ALJ failed to address other limitations in Dr. Tzetzo's opinion—namely, that Samantha was limited in "maintaining a schedule, being punctual, sustaining an ordinary routine, and performing at a consistent pace."  See Docket Item 6-1 at 13-14.  But courts in this Circuit have repeatedly found RFC restrictions to simple, routine, and repetitive tasks sufficient to account for such limitations.  *See, e.g.*, *Roy R. v. Comm'r of Soc. Sec.*, 2024 WL 4879760, at *5 (W.D.N.Y. Nov. 22, 2024) ("[T]he ALJ's limitation of [the p]laintiff to simple, routine tasks can account for [the plaintiff's] limitations for performing within a schedule and maintaining regular attendance." (internal quotations and citation omitted)); *Arthur M. v. Saul*, 2021 WL 2309884, at *4 (W.D.N.Y. June 7, 2021) ("[T]he restrictions imposed by the RFC, including that [the] plaintiff can perform only simple and routine tasks . . . are sufficient to account for [the] plaintiff's moderate limitations with regard to completing a normal workday or workweek without interruption as well as performing at a consistent pace without an unreasonable number and length of rest periods."); *see also Denise Marie T.-W. v. Comm'r of Soc. Sec.*, 2024 WL 4162490, at *6 (W.D.N.Y. Sep. 12, 2024) ("Moderate limitations in some or all areas of mental functioning may be accounted for in an RFC by limiting a plaintiff to simple, routine work. . ..").  So the limitations incorporated into the RFC accounted for

the moderate limitations in Dr. Tzetzo's opinion—particularly in light of Dr. Tzetzo's explicit conclusion that "[b]ased on the evidence . . .[, Samantha] can handle simple work tasks."  Docket Item 3 at 126.

Samantha also argues that even if the RFC accounted for the limitations about which Dr. Tzetzo opined, the ALJ's failure to explain how it did so was error.  *See* Docket Item 6-1 at 15–18.  But "[a]n ALJ does not have to state on the record every reason justifying a decision," *Valdes-Ocasio v. Kijakazi*, 2023 WL 3573761, at *1 (2d Cir. May 22, 2023) (quoting *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012)); rather, so long as the ALJ's decision provides "an adequate basis for meaningful judicial review . . . and is supported by substantial evidence," the ALJ does not err, *Cichocki*, 729 F.3d at 177.  And that is precisely the case here.

Finally, to the extent that Samantha argues that the RFC's limitation to only occasional interaction with others did not adequately address the limitations in Dr. Tzetzo's opinion, *see* Docket Item 6-1 at 15-16, that argument also is misplaced.  Indeed, the ALJ noted Dr. Tzetzo's opinion that Samantha could "handle simple work tasks involving mainly brief and superficial contact with supervisors, coworkers, and the public," and he found that part of the opinion "not consistent with the record.  *See* Docket Item 4 at 298.  The ALJ explained that Samantha "interacts with her boyfriend and keeps in touch with her brothers"; that Samantha "was able to use public transportation"; and that "there is no evidence that [Samantha] did not get along with her providers."  *Id.*  So contrary to Samantha's argument, *see* Docket Item 6-1 at 16, the ALJ adequately explained any inconsistency between the RFC and the limitations in Dr. Tzetzo's opinion.

As the ALJ recognized in his decision, Dr. Tzetzo found that Samantha could "handle simple work tasks," Docket Item 4 at 298—that is, that she had the capacity to work. The ALJ addressed any limitations in Dr. Tzetzo's opinion that might adversely affect that capacity, and the ALJ accounted for those limitations in the RFC. *See id.* at 291. Because the ALJ was "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole, *Matta v. Astrue*, 508 F. App'x 54, 56 (2d Cir. 2013), and because the ALJ did just that, his decision was supported by substantial evidence, and this Court will not second-guess it, *see Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).

## **CONCLUSION**

The ALJ's decision was not contrary to the substantial evidence in the record, nor did it result from any legal error. Therefore, and for the reasons stated above, Samantha's motion for judgment on the pleadings, Docket Item 6, is DENIED, and the Commissioner's cross motion for judgment on the pleadings, Docket Item 12, is GRANTED. The complaint is DISMISSED, and the Clerk of Court shall close the file.

SO ORDERED.

Dated:    February 2, 2026
         Buffalo, New York

                                           */s/ Lawrence J. Vilardo*
                                           LAWRENCE J. VILARDO
                                           UNITED STATES DISTRICT JUDGE